IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CUNA MUTUAL INSURANCE SOCIETY,

                Plaintiff,                OPINION AND ORDER

  v.

                                                    09-cv-197-bbc

OPEN LENDING, INC. and
HOULIHAN, LOKEY, HOWARD &
ZUKIN FINANCIAL ADVISORS, INC.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This civil action for declaratory and injunctive relief was removed from the Circuit Court for Dane County, Wisconsin on April 3, 2009. The case arises out of a joint venture between plaintiff CUNA Mutual Insurance Society and defendant Open Lending, Inc. to operate a business known as Lenders Protection, LLC. Plaintiff alleges that defendant Open Lending has breached the parties' operating agreement with respect to Lenders Protection and asks the court to clarify the parties' rights under the agreement and define certain contract terms.

      Before plaintiff filed this lawsuit, defendant Open Lending invoked a clause of the agreement that would require plaintiff to purchase all of defendant's shares in Lenders

1

Protection at a price to be determined by third-party appraisers, including defendant Houlihan, Lokey, Howard & Zukin Financial Advisors, Inc. Before the court are two motions related to the appraisal process filed by plaintiff and defendant Open Lending. (Because defendant Houlihan has not responded to the pending motions, I will refer to defendant Open Lending as "defendant" in the body of this opinion.) Jurisdiction is present. 28 U.S.C. § 1332.

Defendant has moved to compel the appraisal process and stay proceedings in this court until that process has been completed. Dkt. #5. Plaintiff has moved for a temporary stay of the appraisal proceedings, pending resolution of its request for declaratory judgment. Dkt. #6. Thus, the primary question in this case is when the appraisal provision should take effect. Defendant asserts that under the agreement, it is entitled to invoke the process immediately. On the other hand, plaintiff contends that appraisal cannot occur before the court resolves disputed questions of breach of contract, the timing of the appraisal process and interpretation of certain contract terms related to the valuation of defendant's shares in Lenders Protection.

Having reviewed the operating agreement, I find that the parties agreed to 1) establish the fair market value of defendant's shares through a binding appraisal process; 2) attempt to resolve any other contract dispute first through negotiation and mediation, except that a party can sue for equitable relief to preserve the status quo between the parties; and 3)

2

consider any breach of the contract in valuing the shares.  Because allowing the valuation proceedings to continue at this point might give defendant an unfair advantage in the appraisal process and circumvent the dispute resolution process agreed to by the parties, I will grant plaintiff's motion for a temporary stay of the appraisal proceedings and deny defendant's motion to compel.  The appraisal proceedings and this case will be stayed pending the parties' completion of the general dispute resolution process outlined in their agreement.

For the purpose of deciding this motion, I find from the facts proposed by the parties and their operating agreement that the following facts are both material and undisputed.

## UNDISPUTED FACTS

### A.  The Parties and Their Agreement

Plaintiff CUNA Mutual Insurance Society is an Iowa corporation with its principal place of business in Madison, Wisconsin.  Defendant Open Lending, Inc. is a Texas corporation with its principal place of business in Austin, Texas.  Plaintiff and defendant jointly operate and each own 50 percent interest in Lenders Protection, LLC, a Delaware limited liability company that provides insurance underwriting software and distributes credit default insurance to the United States credit union market.

On December 19, 2003, plaintiff and defendant entered into an operating agreement with respect to Lenders Protection. The agreement is governed by Delaware state law. Section 2.4 of the agreement provides that Lenders Protection, plaintiff, defendant and "their respective Affiliates, as applicable, will execute and deliver" ancillary agreements, defined in Exhibit A to the agreement as including a distribution agreement and a software maintenance agreement. Dkt. #10, Pt. #18. Section 9.5 of the agreement states the following with respect to a default of the agreement:

> In the event that the Class A Owner or the Class B Owner should materially default in the performance of any material terms conditions, undertakings, covenants, or obligations set forth in this Agreement or any Ancillary Agreement and such default will not have been remedied within thirty (30) days after written notice thereof from the other Owner (or within such other cure period as may be applicable), such other Owner may, without prejudice to any other remedies available to it at law or in equity, deliver written notice to the defaulting Owner electing, either: (i) to dissolve the Company pursuant to Section 11.1(a)(3); or (ii) exercise the Put Option or Call Option (as applicable) in accordance with the terms of Section 10.3. If the defaulting Owner will dispute whether a default has occurred, or the amount of the loss, damage, cost, or expense incurred by the nondefaulting Owner as a consequence of a default, the matter will promptly be submitted to the dispute resolution procedure set forth in Article XII hereof. . . .

The "put" and "call" options referred to in § 9.5 are described in Article X, §§ 10.1 and 10.2. The put option provides that at any time on or after December 19, 2008, defendant can require plaintiff to purchase all of defendant's shares in Lenders Protection. Plaintiff has similar rights under the contract, which provides that on or after December 19,

4

it can require defendant to sell all of its shares in Lender's Protection. Section 10.6 of the agreement provides that plaintiff must purchase the shares at their fair market value, the determination of which "will take into account all factors relevant to the determination of Fair Value, including the impact of [] fraud, breach or competitive activities." If plaintiff and defendant do not agree on the purchase price of defendant's shares, they will select appraisers to determine the fair market value of Lender's Protection. The agreement sets forth a detailed process for selecting appraisers and conducting the appraisals.

Article XII of the operating agreement discusses dispute resolution and requires the parties to "attempt in good faith to resolve through negotiation any dispute, claim or controversy arising out of or relating to" the agreement. § 12.1. Further, "no civil action with respect to any dispute, claim or controversy arising out of or relating to this Agreement may be commenced until the matter has been submitted to JAMS, or its successor, for mediation." § 12.2. However, "[e]ither party may seek equitable relief prior to the mediation to preserve the status quo pending the completion of that process. Except for such an action to obtain equitable relief, neither party may commence a civil action with respect to the matters submitted to mediation until after the completion of the initial mediation session, or 45 days after the date of filing the written request for mediation, whichever occurs first." Id.

5

B.  Pre-Litigation Events

In August 2008, plaintiff discovered what it believed to be security and control problems with the information technology hardware and software that defendant was required to maintain.  The software application at issue contained detailed personal and private information about Lenders Protection's customers.  Any vulnerability in the security of this information would jeopardize Lenders Protection's compliance with state and federal regulations and contractual obligations to its customers.  On December 5, 2008, Mark Winger, a vice president of plaintiff's IT Commercial Products, formally presented these concerns to Lenders Protection's board of directors.

Plaintiff alleges that defendant has breached its obligations under the software maintenance ancillary agreement and has not yet cured that breach, even though plaintiff has given it an opportunity to do so.  Defendant denies that "deficiencies" or "vulnerabilities" existed, denies breaching any agreement it had with plaintiff or Lenders Protection, denies that the December 5 presentation constituted notice of any breach and asserts that to the extent that any cure was required, it undertook timely remedial efforts.

In a letter dated December 20, 2008, defendant notified plaintiff that it was electing to exercise the put option of the operating agreement.  The parties failed to reach an agreement concerning the fair value of defendant's shares before the put option notice

expired on February 18, 2009. (Plaintiff maintains that defendant never had the right to exercise the put option because of its alleged breach.) On February 19, 2009, defendant notified plaintiff in writing of its desire to invoke the appraisal process pursuant to § 10.6(b)(1) of the operating agreement and appoint Houlihan, Lokey, Howard &. Zukin Financial Advisors, Inc. to act as appraiser. In a letter dated the next day, plaintiff acknowledged defendant's invocation of the appraisal process, noted that it had 30 days to appoint its own appraiser, expressed its concern that defendant was "planning to assert a very different interpretation of the Operating Agreement in an effort to affect the ultimate valuation of the joint venture" and identified numerous issues that it wanted to clarify and resolve with defendant and present to the appraisers in order to have a fair and meaningful valuation. These included the effect of the option date on the valuation, the terms of the operating and ancillary agreements and the alleged breach of the software maintenance agreement; the timing of the third appraiser; and whether to perform the 2009 business plan. On February 26, 2009, defendant responded to plaintiff's letter and objected to any delays in defendant's exercise of the put option. It also denied any breach of the operating or software maintenance agreements and asserted that plaintiff had breached the distribution ancillary agreement.

In March 2009, the parties continued to dispute the occurrence of any breaches and the alleged ambiguity of the terms of the operating agreement relating to the appraisal and

7

valuation process. On or about March 18, 2009, plaintiff filed a complaint against Open Lending and Houlihan, Lokey, Howard &. Zukin Financial Advisors, Inc. in the Circuit Court for Dane County, Wisconsin, requesting declaratory and injunctive relief concerning the appraisal process and the valuation of Lenders Protection. The case was removed to this court on April 3, 2009.

## OPINION

In bringing its motion, defendant relies on the Federal Arbitration Act, which governs all issues relating to the validity and enforceability of arbitration agreements and reflects a strong federal policy favoring arbitration as a means of dispute resolution. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218-21 (1985); Moses H. Cone Memorial Hospital v. Mercury Construction Corporation, 460 U.S. 1, 22-23 (1983). Under section 3 of the act, upon motion by a party, federal courts must compel arbitration and stay proceedings when the issue is subject to an arbitration agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. 9 U.S.C. § 3; United States Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 583-83 (1960). A court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Warrior & Gulf Navigation Company, 363 U.S. at 582-83.

The operating agreement signed by the parties in this case does not contain an arbitration clause but does provide for two different types of alternative dispute resolution, depending on the type of dispute involved. The first involves an appraisal process for resolving disputes that may arise over the fair value of defendant's shares in Lenders Protection once a party exercises a put or call option. A separate provision of the agreement requires the parties to attempt to negotiate any dispute, claim or controversy relating to the agreement and, if that process fails, to undergo at least one mediation session. The Court of Appeals for the Seventh Circuit has held that the name given to a dispute resolution clause is "unimportant . . . what matters is that [state law] respects the parties' ability to make agreements of this kind." Omni Tech Corporation v. MPC Solutions Sales, LLC, 432 F.3d 797, 799 (7th Cir. 2005). Therefore, in determining whether to compel dispute resolution and stay litigation, the court must look to the validity of the mandatory dispute resolution provision under the governing state contract law, in this case Delaware. Id.; First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-44 (1995) (citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995); Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)) (arbitrability of merits of dispute depends on whether parties agreed to arbitrate that dispute under state law governing contract).

As noted by defendant, courts applying Delaware law have enforced appraisal provisions similar to the ones in this case. Closser v. Pennsylvania Mutual Fire Insurance Company, 457 A.2d 1081, 1087 (Del. 1983) (construing appraisal provisions of insurance policy as mandatory form of arbitration, precluding recourse to the courts); Northeast Financial Corporation v. Insurance Company of North America, 757 F. Supp. 381, 383-84 (D. Del. 1991). Delaware also supports and encourages parties to use other forms of alternative dispute resolution, including mediation, and enforces those provisions in private contracts. E.g., 6 Del. C. § 7701 et seq. (codifying Delaware Voluntary Alternative Dispute Resolution Act and permitting commercial parties to agree in advance to resolve disputes using alternative dispute resolution method of their choosing); 10 Del. C. § 5701 et seq. (codifying Delaware Uniform Arbitration Act and stating that written agreements to arbitrate are valid, enforceable and irrevocable); Princeton Insurance Company v. Vergano, 883 A.2d 44, 64 (Del. Ch. 2005) (enforcing confidentiality clause in mediation agreement in medical malpractice case and noting court's and legislature's longstanding commitment to mediation as fair and efficient means of resolving disputes).

Neither party in this case disputes the validity of the appraisal provision. The only question is when that provision should take effect. Defendant seeks to compel the appraisal process immediately because the parties dispute the fair value of its shares in Lenders Protection. Plaintiff asks the court to stay the appraisal process until the court resolves

10

questions about the breach of contract, the timing of the appraisal process and interpretation of certain contract terms related to the valuation of defendant's shares in Lenders Protection. In support of its request, plaintiff relies on Article XII of the operating agreement, which provides that before mediating any dispute, either party may seek equitable relief in a civil action "to preserve the status quo pending the completion of that process."

Defendant argues that the operating agreement clearly envisions that the appraisers should resolve any contract interpretation issues in this case because the underlying question is the fair market value of the shares. In support, it cites the general rule announced in Moses H. Cone Memorial Hospital, 460 U.S. at 24-25, that any doubts concerning the scope of an arbitration provision should be resolved in favor of the arbitration process. Although that is generally true, "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." First Options, 514 U.S. at 45. In this case, the parties' appraisal provision governs only the manner of determining the value of defendant's shares. Northeast Financial, 757 F. Supp. at 384 (citing Pullman, Inc. v. Phoenix Steel Corporation, 304 A.2d 334, 339 (Del. Super. Ct. 1973) ("appraisal extends only to a determination of actual cash value, all other issues being reserved for decision by a court").

The initial dispute that plaintiff seeks to have resolved in this case is whether defendant breached the operating agreement. Under the terms of the contract, such a dispute is not governed by the appraisal provision but rather by the dispute resolution

11

provisions in Article XII. Plaintiff contends that the court must step in and determine whether there was a breach and what effect, if any, a breach would have on the appraisal process. However, as the parties mention in their briefs, the agreement mandates that any disputes be resolved first through negotiation and then mediation. Although a party may seek equitable relief, as plaintiff does in this case, the purpose of doing so is "to preserve the status quo pending the completion" of mediation. Preserving the status quo in this case could mean staying the appraisal process and enjoining defendants Open Lending and Houlihan from valuing shares until other disputes are resolved. However, deciding whether defendant breached the agreement or the effects that may result from the breach goes far beyond preserving the status quo. Those are questions for mediation.

The remaining question for the court is whether temporarily staying the appraisal process is the appropriate equitable remedy under the terms of the parties' agreement. The answer lies in part in section 9.5 of the agreement, which discusses what happens in the event that the parties dispute whether a default has occurred:

> If the defaulting Owner will dispute whether a default has occurred, or the amount of the loss, damage, cost, or expense incurred by the nondefaulting Owner as a consequence of a default, the matter will promptly be submitted to the dispute resolution procedure set forth in Article XII hereof.

If defendant is found to be in material breach of the agreement, plaintiff would have the option under § 9.5 of the agreement to purchase defendant's shares pursuant to the call

12

option. However, in valuing the shares, the appraisers would have to consider the impact of the breach and any other relevant factors. § 10.6. Therefore, it makes sense to determine whether there is a material breach before the appraisers value the shares.

The problem in this case is that defendant exercised the put option on December 20, 2008, before plaintiff could complete its obligations under the dispute resolution procedure in Article XII. Although defendant had the right to exercise the put option at that time, a very different outcome might occur if plaintiff invoked the call option because defendant breached the agreement. It is clear from the operating agreement that the options available to the parties and the fair value of defendant's shares are affected by a breach. What is not clear is who should win the race to the appraisers when the default provision and put and call option are invoked simultaneously. That question must be addressed first by the parties during negotiation or mediation. To best preserve the status quo while that question is being answered, I will stay the valuation proceedings initiated by defendant.

In sum, allowing the appraisal process to continue at this point might give defendant an unfair advantage and circumvent the dispute resolution process provided for in the agreement. 9 U.S.C. § 3 (staying litigation not appropriate where applicant is in default in proceeding with arbitration). Therefore, I will deny defendant's motion to compel and grant plaintiff's motion to temporarily stay the valuation proceedings. However, I will grant

13

defendant's motion to stay proceedings in this court until the parties have completed the dispute resolution process outlined in Article XII of their agreement. As the agreement dictates, the parties first must use that process to address "any dispute, claim or controversy arising out of or relating to" the agreement, including the apparent conflict between the put and call option and default provision of the agreement.

ORDER

IT IS ORDERED that:

1. Defendant Open Lending, Inc.'s motion to compel arbitration and stay proceedings is DENIED.

2. Plaintiff CUNA Mutual Insurance Society's motion for a stay of valuation proceedings is GRANTED.

3. All proceedings in this action are STAYED pending the parties' completion of the dispute resolution process set forth in their operating agreement.

Entered this 28th day of May, 2009.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge